1
2
3
4
5
6
7               UNITED STATES DISTRICT COURT
8              SOUTHERN DISTRICT OF CALIFORNIA
9

10   AMOR MINISTRIES,                        Case No.:  3:13–cv–01441–GPC–BGS
                                             [Consolidated with 3:13–cv–02517]
11                           Plaintiff,
                                             **NOTICE OF TENTATIVE RULING**
12   v.                                      **ON CENTURY'S MOTION FOR**
                                             **JUDGMENT AS A MATTER OF**
13   CENTURY SURETY COMPANY,                 **LAW**
14                           Defendant.      [ECF Nos. 77, 78, 79, 99, 107]
15
16
17

18          Presently before the Court is Defendant Century Surety Company's ("Century's")

19   motion for judgment as a matter of law under Federal Rule of Civil Procedure ("Rule")

20   50(b) (ECF Nos. 77, 78, 79, 99).  The motion has been fully briefed.  (ECF Nos. 105, 107,

21   113.)  The Court has considered the motion, all submissions filed in support of and in

22   opposition to the motion, the balance of the record, and the applicable law.  Being fully

23   advised, for the reasons set forth below the Court issues the following tentative rulings in

24   advance of the hearing scheduled for April 8, 2016.

25                                  **BACKGROUND**

26          Plaintiff Amor Ministries ("Amor") is a non–profit religious organization that acts

27   as a facilitator and coordinator for civic groups and churches seeking to engage in

28   construction projects in impoverished areas, including Mexico.  (Trial Tr. at 212.)  As part

                                              1

of Amor's coordination, it selects the sites where churches engage in construction projects, it takes the churches to those sites, and it provides materials for churches to complete those projects.  (*Id.* at 213.)  Amor is not a construction company and does not actually engage in any building or construction on the projects.  (*Id.* at 212–13)  Amor's home office is in San Diego, California.  (*Id.* at 213.)  The Days are Arizona residents.  (*Id.* at 5, 155.)

Amor hired an insurance broker, Mr. Yetter, to obtain an insurance policy on their behalf.  (*Id.* at 346.)  Mr. Yetter filed an application requesting coverage for a "CGL, lessor's risk" policy, which Mr. Yetter described as a policy "for a general liability coverage with lessor's risk included."  (*Id.* at 350–51.)  Century issued a commercial general liability insurance policy ("Policy") to Amor for the period February 13, 2006 to February 13, 2007. (*Id.* at 167.)  Under the Policy, Century was obligated to defend Amor against lawsuits brought against it and indemnify Amor against judgments entered against it on claims covered under the Policy.  (*Id.* at 166.)  The Policy limits were $1,000,000, and included an excess policy that applied to claims covered under the policy up to $5,000,000.  (*Id.*)  The Policy covered injuries when they occur in the coverage territory, during the policy period, and when no insured knew of the injury before the policy period. (Not. of Removal, State Court Compl. Ex. A ("Policy") at 26, ECF No. 1–1.)[1]  The Policy defined coverage territory as including the United States, its territories, Puerto Rico, and Canada and international waters. (Policy at 37, ECF No. 1–1).  The Policy also expanded coverage to all injuries arising out of the activities of a person whose home is in the aforementioned coverage territory, but is away for a short time on the insured's business. (*Id.*)

The policy excluded claims for injuries to "volunteer workers," defined as, "a person who donates his or her work and acts at the direction of and within the scope of duties determined by [Amor], and is not paid a fee, salary or other compensation by [Amor] or

---

[1]  Page numbers pertaining to the Policy refer to page numbers imprinted on the document header by CM/ECF.

anyone else for their work performed for [Amor]." (*Id.* at 22). The Policy also included an endorsement on form CGL 1711, entitled "Limitation of Coverage to Specified Classifications, Operations, Premises, or Projects" that modified the "Commercial General Liability Coverage Part," which provided, in relevant part:

> The following new part is added to Section I – Coverages, Coverage A.
> Bodily Injury and Property Damage Liability, 1. Insuring Agreement. 1. B.
> (4) The "bodily injury" or "property damage" arise from:
>> (a) The classification or operations shown above; or any operations
>>     necessary or incidental to those classifications or operations shown
>>     above;
>> (b) The ownership, maintenance or use of the premises shown above
>>     and operations necessary or incidental to those premises; or
>> (c) The projects shown above.

(*Id.* at 25.)

There were no "classifications" or "projects" identified in the endorsement, but Amor's San Diego office was listed as a "premise." (*Id.*) Thus, based on the CGL 1711 endorsement, Century's insuring obligation also required that the bodily injury arise from the "ownership, maintenance or use of [Amor's office] and operations necessary or incidental to those premises." (*Id.*) Additionally, the Policy included an explanation that coverage for projects or operations not listed can only be covered if agreed to in writing. (*Id.*)

On November 12, 2006, Ronald Day was a volunteer on a three–day mission trip with his church, Central Christian Church of the East Valley in Arizona ("CCC") to build a church in Mexico. (Trial Tr. at 170.) Although Mr. Day was on the trip as a CCC volunteer. (*See id.* at 216.) While Ronald Day was working on the church's partially constructed roof, he stepped onto an unsheathed rafter, which broke, causing him to fall and land on the cement foundation. (*Id.* at 175.) Mr. Day sustained severe injuries to his brain and back. (*Id.* at 166.) Amor's insurance policy through Century Surety was in full force and effect at the time of Mr. Day's injuries. (*Id.* at 168.) Ronald and Heather Day filed a lawsuit against CCC and Amor in Arizona state court. (*Id.* at 167.) On June 7, 2011, a jury returned a verdict in favor of the Days against Amor and CCC. (*Id.* at 284.)

3

The judgment against Amor was for the amount of $891,750.00 with interest accruing at the rate of 4.25%.  (*Id.*)

Amor tendered its defense of the Day lawsuit to Century under the Policy.  (*Id.* at 228–29.)  On March 4, 2011, Century denied Amor's tender of the Day lawsuit.  (*Id.* at 74.)  Century's agent, Ms. Lisa Henderson, reviewed the complaint submitted by Amor.  (*Id.* at 36.)  She then sent Amor an eleven–page denial letter with the approval of her manager.  (*Id.* at 39, 48.)  Although Amor's attorney notified Ms. Henderson that the California courts interpret certain Policy language broadly, she did not conduct any further investigation because she thought the Policy language was clear and did not cover the claim.  (*See id.* at 49–51, 60.)  Ms. Henderson concluded that the Policy was premises–specific, meaning that it only covered conduct that occurred at the premises.  (*See id.* at 50–51, 125.)  Ms. Henderson did not attempt to find out if any of the conduct that led to Mr. Day's injury occurred at Amor's premises.  (*See id.* at 57–59.)  On April 25, 2011, Ms. Henderson responded to Amor's attorney by affirming denial of the claim and representing that she had carefully reviewed and investigated the complaint.  (*See id.* at 62–63, 95.)  She further explained that she did not conduct further investigation because she assumed all of the attorney's allegations in the Days' complaint to be correct and still did not find coverage.  (*See id.* at 66.)  She concluded that the claim could not be covered because the injuries occurred in Mexico.  (*Id.* at 67.)  Ms. Henderson acknowledged at trial that in the *Feurzeig* case[2], the conduct (slander) occurred at the premises, but the injury (damage to reputation) occurred off the premises.  (*Id.* at 77–78.)  Century did not defend Amor at the jury trial and has not paid the judgment against Amor.  (*Id.* at 167.)

Ryan Perkio, Amor's regional director for Mexico, set the standards for selecting sites in San Diego.  (*Id.* at 214–15.)  Amor prepared the manual that instructed church volunteers how to build the churches in San Diego, and Amor coordinated the delivery of material, including wood, to the job sites.  (*Id.* at 214, 224, 254, 257–58.)  Mr. Day testified

---

[2] *Feurzeig v. Insurance Co. of the West*, 59 Cal. App. 4th 1276 (1997).

that the selection of the site caused the CCC volunteers to deviate from the instructions for sheathing the roof of the church because an electrical pole obstructed the normal process. (*See id.* at 173–74.) During this deviation, a sheath became stuck. (*Id.* at 175.) While Mr. Day was walking over to adjust the stuck sheath, the piece of wood that he was walking on gave way, which caused him to fall and resulted in his injuries. (*Id.*)

The Days testified that as a result of Century's conduct, they both have suffered increased stress. Mr. Day suffered increased stress because he was unable to pay for the treatment he needed, which exacerbated his brain injury. (*See id.* at 179–81.) Century's refusal to pay the claims has led to increased financial hardship, which has caused Mr. Day tremendous stress. (*Id.* at 182–83.) The difficulties strained Heather and Ronald Day's marriage and they have since divorced. (*Id.* at 183–84.) Heather Day has also suffered increased stress as a result of financial hardship, increased familial responsibility, an unusually long adjudicative process, and attending to Ronald Day's injuries. (*See id.* at 285–90.)

Amor filed this lawsuit against Century for breach of contract and breach of the covenant of good faith and fair dealing. (Not. of Removal at 7, ECF No. 1.) Amor withdrew its duty to defend claim during the trial. (Trial Tr. at 89–90.) Century sued the Days to obtain a determination that their judgment is not covered by the Policy. (*Id.* at 167.) The Days counterclaimed as judgment creditors for breach of contract and breach of the covenant of good faith and fair dealing. (*Id.*) Amor and the Days sought contract damages under the Policy, bad faith compensatory damages and bad faith punitive damages. (*Id.*)

The Court conducted a jury trial in this matter from January 25 to January 28, 2016, on Plaintiffs' claims against Defendant for breach of contract and breach of the covenant for good faith. (*See* ECF Nos. 71, 73, 80, 81.) On January 27, 2016, Century moved for judgment as a matter of law pursuant to Rule 50(a) on three grounds: (1) for judgment against Amor and the Days on their prayer for punitive damages because they failed to present "clear and convincing" evidence that a Century officer, director or managing agent

acted with oppression or malice (ECF No. 77); (2) for judgment against the Days on their claim for emotional distress damages because they presented no evidence of economic loss (ECF No. 78); and (3) for judgment against the Days on their claim for *Brandt* fees because they presented no evidence that Century's conduct proximately caused them to incur any attorney's fees (ECF No. 79).  Century orally presented these three Rule 50(a) motions before the jury began its deliberations.  (Trial Tr. at 464–65.)  The Court deferred ruling on these motions until after the case was submitted to the jury.  (*Id.* at 463–564.)

The following morning on January 28, 2016, while the jury was deliberating, Century orally asserted the same three motions under Rule 50(a) for judgment as a matter of law:  (*See* Trial Tr. at 570:8–16.)  Additionally, Century attempted to raise an additional argument regarding all parties' "bad faith" claim:

> THE COURT: Let the record reflect that we are outside the presence of the jury. The jury is deliberating, and all counsel for the record are present in the courtroom. We are here on a number of Rule 50 motions that have been filed by the defense. There are three. There is a motion for judgment as a matter of law on the claim for punitive damages; there is a Rule 50 motion regarding the Days' attorney fees claim; and lastly, a motion for judgment as a matter of law on the Days' claim for emotional distress damages. Further, plaintiffs, the Days, have made an oral motion, Rule 50 motion, I believe, on the question of the rescission issue before the Court. So at this time, what I would be prepared to do is request briefing from the parties with respect to Century's Rule 50 motion on the claim for emotional distress damages. That was also going to be my request on the attorney's fee claim; however, in looking at this now, I realize that this motion is limited to the Days' attorney fee claim, so it would be directed only as — the record as it relates to what was provided by Mr. Crown; is that right?
>
> MR. GALT: That particular motion. And we also intended to make an oral motion, in addition to those written motions.
>
> THE COURT: As to?
>
> MR. GALT: All parties' bad faith claim.
>
> THE COURT: So it may be that that's a motion that is best also left to further

briefing. And the further briefing would then also include, as an attachment, transcripts from the trial on any supporting testimony that the parties are seeking to place before the Court.

(Trial Tr. at 570:8–571:12.)

The Court heard argument on Century's claim regarding punitive damages and took Century's motion under submission.

On January 28, 2016, the jury returned a verdict in Plaintiffs' favor on both claims. (See Jury Verdict I, ECF No. 86.)  The jury awarded damages separate from breach of contract damages as follows: (1) $400,000.00 to Amor for economic loss; (2) $1,050,000.00 to Ronald Day, comprised of $300,000.00 for economic loss and $750,000.00 for noneconomic loss; and (3) $350,000.00 to Heather Day comprised of $100,000.00 for economic loss and $250,000.00 for noneconomic loss.  (*Id.*)  After the second phase of deliberations the jury awarded punitive damages as follows: (1) $2,000,000.00 to Amor; (2) $2,500,000.00 for Ronald Day; and (3) $750,000.00 to Heather Day.  (Jury Verdict II, ECF No. 87.)

On February 12, 2016, Century filed supplemental briefing on its three previously asserted arguments for judgment as a matter of law, as well as three additional bases: (1) for judgment against Amor and the Days on the ground they presented no substantial evidence establishing that the *Day v. Amor* judgment is within the coverage of the Century policy; (2) for judgment against Amor because Amor has paid no part of the *Day v. Amor* judgment so the right to indemnity belongs only to the Days; (3) for judgment against Amor and the Days on their "bad faith" claim.  (*See* Supp. Brief, ECF No. 99.)  On February 26, 2016, Plaintiffs filed an opposition, arguing, inter alia, that Century's motion on grounds not previously asserted pre–verdict are procedurally barred.  (*See* Opp'n, ECF No. 106.)  The Court ordered supplemental briefing on the propriety of Century raising arguments not previously asserted in its pre–verdict Rule 50(a) motion.  (ECF No. 110.)  Century filed supplemental briefing on the issue on March 11, 2016.  (ECF No. 110.)

//

**LEGAL STANDARD**

A Rule 50(b) motion for judgment as a matter of law is not a freestanding motion. Rather, it is a renewed Rule 50(a) motion. *See* FED. R. CIV. P. 50. Under Rule 50, a party must make a Rule 50(a) motion for judgment as a matter of law before a case is submitted to the jury. *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). If the judge denies or defers ruling on the motion, and if the jury then returns a verdict against the moving party, the party may renew its motion under Rule 50(b). *Id.*

Because it is a renewed motion, a proper post–verdict Rule 50(b) motion is limited to the grounds asserted in the pre–deliberation Rule 50(a) motion. *Id.* Thus, a party cannot properly "raise arguments in its post–trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre[–]verdict Rule 50(a) motion." *Freund v. Nycomed Amersham,* 347 F.3d 752, 761 (9th Cir. 2003) (citing FED. R. CIV. P. 50 advisory committee's notes to the 1991 amendments ("A post trial motion for judgment can be granted only on grounds advanced in the pre–verdict motion.")); *Murphy v. City of Long Beach,* 914 F.2d 183, 186 (9th Cir. 1990) ("[Judgment notwithstanding the verdict] is improper if based upon grounds not alleged in a directed verdict [motion]." (brackets in original)); *see also* FED. R. CIV. P. 50 advisory committee's notes to the 2006 amendments ("Because the Rule 50(b) motion is only a renewal of the pre[–]verdict motion, it can be granted only on grounds advanced in the pre[–]verdict motion."). However, Rule 50(b) "may be satisfied by an ambiguous or inartfully made motion" under Rule 50(a). *Reeves v. Teuscher,* 881 F.2d 1495, 1498 (9th Cir. 1989). Absent such a liberal interpretation, "the rule is a harsh one." *Nat'l Indus., Inc. v. Sharon Steel Corp.,* 781 F.2d 1545, 1549 (11th Cir. 1986). The Supreme Court has held that Rule 50(b) is to be strictly observed, and that failure to comply with it precludes a later challenge to the sufficiency of the evidence on appeal. *See Johnson v. New York, New Haven & Hartford R.R. Co.,* 344 U.S. 48, 50 (1952); *Cone v. West Virginia Pulp & Paper Co.,* 330 U.S. 212, 217–18 (1947); *Desrosiers v. Flight Int'l of Fla. Inc.,* 156 F.3d 952, 956–57 (9th Cir. 1998). Any challenges not presented in a Rule 50(a) motion are waived and cannot be presented in a Rule 50(b)

motion. *Tortu v. Las Vegas Metro. Police Dep't,* 556 F.3d 1075, 1083 (9th Cir. 2009) ("Failing to make a Rule 50(a) motion before the case is submitted to the jury forecloses the possibility of considering a Rule 50(b) motion.").

"Judgment as a matter of law is proper if the evidence, construed in the light most favorable to the non–moving party, allows only one reasonable conclusion and that conclusion is contrary to that reached by the jury." *Acosta v. City & Cnty. of San Francisco*, 83 F.3d 1143, 1145 (9th Cir. 1996). Courts review a jury's verdict for substantial evidence in ruling on a properly made motion under Rule 50(b). *Janes v. Wal–Mart Stores, Inc.,* 279 F.3d 883, 888 (9th Cir. 2002). "Substantial evidence is 'such relevant evidence as reasonable minds might accept as adequate to support a conclusion.'" *Mockler v. Multnomah Cnty.*, 140 F.3d 808, 815 n.8 (9th Cir. 1998) (citing *Murray*, 55 F.3d at 1452). Judgment as a matter of law "is appropriate when the jury could have relied only on speculation to reach its verdict." *Lakeside–Scott v. Multnomah Cnty.*, 556 F.3d 797, 802–03 (9th Cir. 2009). "[I]n entertaining a motion for judgment as a matter of law, the court . . . may not make credibility determinations or weigh the evidence." *Reeves*, 530 U.S. at 150. A jury verdict "must be upheld if it is supported by substantial evidence . . . even if it is also possible to draw a contrary conclusion." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002). If the trial court determines that the evidence was insufficient to support a jury's verdict, it may either (1) enter judgment as a matter of law; or (2) order a new trial. FED. R. CIV. P. 50(b); *Cone v. West Virginia Pulp & Paper Co.*, 330 U.S. 212, 215 (1947).

## DISCUSSION

### A.    Grounds Not Preserved for Rule 50(b) Motion

The following grounds in Century's Rule 50(b) motion for judgment as a matter of law were not preserved in its pre–verdict Rule 50(a) motion: (1) for judgment against Amor and the Days on the ground they presented no substantial evidence establishing that the *Day v. Amor* judgment is within the coverage of the Century policy; (2) for judgment against Amor because Amor has paid no part of the *Day v. Amor* judgment so the right to

9

indemnity belongs only to the Days.  (Supp. Brief at 1–9, ECF No. 99.)  Plaintiffs argue that these arguments are procedurally foreclosed because a post–verdict Rule 50(b) motion is limited to grounds asserted in a pre–verdict Rule 50(a) motion.  The Court agrees.

The Ninth Circuit "strictly construe[s] the procedural requirement of filing a Rule 50(a) motion before filing a Rule 50(b) motion." *Tortu*, 556 F.3d 1075, 1082 (9th Cir. 2009) (holding that district court should not have considered party's Rule 50(b) motion because it was procedurally foreclosed by party's failure to file a Rule 50(a) motion).  Any challenges not presented in a Rule 50(a) motion are waived and cannot be presented in a Rule 50(b) motion.  *Id.* at 1083 ("Failing to make a Rule 50(a) motion before the case is submitted to the jury forecloses the possibility of considering a Rule 50(b) motion."). *See also Ng v. Geithner*, 418 F. App'x 625, 626 (9th Cir. 2011) ("Ng waived any challenge to the district court's denial of his post–verdict motion for judgment as a matter of law by failing to make the motion at the close of his case."); *Image Technical Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1212 (9th Cir.1997) ("We strictly adhere to the requirements of Rule 50(b), which prohibit a party from moving for a judgment as a matter of law after the jury's verdict unless that motion was first presented at the close of evidence."); *Janes v. Wal–Mart Stores Inc.*, 279 F.3d 883, 886–87 (9th Cir. 2002) (by failing to move for judgment as a matter of law before submission of the case to the jury, "Wal–Mart failed to comply with the procedural prerequisite for renewing its motion for JMOL after trial"); *Cotton ex rel. McClure v. City of Eureka, Cal.*, 860 F. Supp. 2d 999, 1009 (N.D. Cal. 2012) (finding waiver where defendants failed to preserve issue on a Rule 50(a) motion); *Patriot Rail Corp. v. Sierra R. Co.*, No. 2:09–CV–0009–TLN–AC, 2015 WL 4662720, at *3 (E.D. Cal. Aug. 5, 2015) ("At the outset, the Court notes that Sierra argues that Patriot is estopped from moving under Rule 50(b) because Patriot did not make a Rule 50(a) motion with respect to the punitive damages phase.").

Century acknowledges that it did not raise these two issues (coverage and Amor's right to indemnity) in its pre–verdict Rule 50(a) motion.  Instead, Century argues that with respect to these issues Rule 52 applies because these matters were resolved by the Court

10

rather than the jury, the Court was aware that Century objected to the Court's decision, and Plaintiffs were aware of Century's legal contentions.  (Supp. Brief at 2–3, ECF No. 110.) Defendant's reliance on Rule 52 is misplaced.  Rule 52 governs "actions tried on the facts without a jury or with an advisory jury" (i.e., bench trials).  *See* FED. R. CIV. P. 52(a)(1). Rule 52(b) allows the Court to amend its findings and amend the judgment accordingly on a party's motion *in nonjury trials*.  *Id.* 52(b).  Century cites no authority and the Court finds none where a district court following a jury trial reviewed and amended its findings of law pursuant to a post–trial Rule 52 motion.  Nor can motions made pre–trial suffice for a Rule 50(a) motion.  *See Tortu*, 556 F.3d 1082 (rejecting argument that motions made pre–trial suffice for a Rule 50(a) motion); *James*, 279 F.3d at 887 (holding that raising issue in a trial brief and summary judgment motion were insufficient to satisfy requirement to file pre–verdict Rule 50(a) motion).  As such, Century's motion for summary judgment on the coverage issue (ECF No. 17 at 8–12), which was denied (ECF No. 25), cannot operate as a stand–in Rule 50(a) motion on the issue.  Thus, Century's motion on the sufficiency of the evidence with respect to both coverage and indemnity are procedurally precluded.

Accordingly the Court is prepared to **DENY** Century's motion for judgment as a matter of law on the issues of coverage and indemnity.

**B.      Grounds Preserved for Rule 50(b) Motion**

As discussed above, Century preserved four issues in its Rule 50(a) motion:  whether there was sufficient evidence to support: (1) the parties' bad faith claim; (2) the jury's award of punitive damages; (3) judgment for the Days on their claim for emotional distress damages; and (4) judgment for the Days on their claim for *Brandt* fees.  The court reviews these issues for a legally sufficient evidentiary bases for the jury's verdict when viewing the evidence in the light most favorable to Plaintiffs and drawing all evidentiary inferences in Plaintiffs' favor.  FED. R. CIV. P. 50(a); *Acosta*, 83 F.3d at 1145.  Judgment as a matter of law "is appropriate when the jury could have relied only on speculation to reach its verdict." *Lakeside–Scott*, 556 F.3d at 802–03.

//

### (1)   Bad Faith Claim

#### (a)   Waiver

Plaintiffs argue that in addition to the issues of coverage and indemnity, Century's argument that it is entitled to judgment as matter of law on the claims for breach of the implied covenant of good faith and fair dealing is also procedurally foreclosed due to failure to comply with Rule 50(a).  However, Century satisfied the requirements of Rule 50(a) with respect to this claim.

As discussed, Rule 50(a)(2) requires that specific grounds be stated on a motion for judgment as a matter of law before submission of the case to the jury.  FED. R. CIV. P. 50(a)(2).  To meet the specificity requirements of Rule 50(a), a directed verdict motion "shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment."  *Id*.  "The rule that a JNOV may not be granted unless the moving party moved for a directed verdict at the close of all the evidence is a strict one in cases in which judgment is entered upon a general verdict."  *Pierce v. Southern Pac. Transportation Co.*, 823 F.2d 1366, 1369 (9th Cir. 1987).  However, "Fed. R. Civ. P. 50(b) may be satisfied by an ambiguous or inartfully made motion for a directed verdict or by an objection to an instruction for insufficient evidence to submit an issue to the jury."  *Reeves*, 881 F.2d at 1498.  When a court defers ruling on a motion for judgment as a matter of law, it "maintains the motion as a continuing objection to the sufficiency of the evidence, provides notice to the opposing party of the challenge, and constitutes a judicial indication that renewal of the motion is not necessary to preserve the moving party's rights."  *Farley Transp. Co. v. Santa Fe Trail Transp. Co.*, 786 F.2d 1342, 1346–47 (9th Cir. 1985).

On January 27, before jury deliberations, Century expressed its intention to make motions for judgment as a matter of law pursuant to Rule 50(a)(1).  As Century's counsel began discussing the motions, the Court deferred ruling on the motions.  (Trial Tr. at 463–64 ("At this point – I am not going to take them up at this moment, but we can take them up after the jury begins . . . . I will reserve ruling on them. I will defer ruling on all of them.").)  Then, when the Court invited the parties to present their motions and before the

jury had returned its verdict, Century moved, pursuant to Rule 50(a)(1) for judgment as a matter of law on Amor's and the Days' "bad faith" claim.  (*Id.* at 571.)   The Court responded by inviting Century to prepare briefing on the issue (*id.*), which Century has done in its supplemental briefing (*see* Supp. Brief, ECF No. 99).  In these circumstances, Century's "bad faith" argument suffices as timely and it may challenge the sufficiency of the evidence.  *See Reeves*, 881 F.2d at 1498 ("Although Teuscher and Borkowski attempted to move for a directed verdict after all the evidence was in, the court interrupted and told them to renew their motion after the verdict.  They did so.  In these circumstances their motion suffices, is timely, and they may challenge the sufficiency of the evidence.").  Thus, Century satisfied Rule 50(a) requirements with respect to the parties' bad faith claim.

### (b)    Sufficiency of Evidence

Century argues it is entitled to judgment as a matter of law because there is insufficient evidence to support Plaintiffs' claim for breach of the implied covenant of good faith and faith dealing.

California law implies a covenant of good faith and fair dealing in every contract. *Carma Dev. (Cal.), Inc. v. Marathon Dev. California, Inc.*, 6 Cal. Rptr. 2d 467, 826 P.2d 710 (1992); *see also Chodos v. West Publ'g Co.,* 292 F.3d 992, 996 (9th Cir. 2002) (noting that "California law, like the law in most states, provides that a covenant of good faith and fair dealing is an implied term in every contract" (citations omitted)).  The covenant is implied "to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenant) frustrates the other party's rights [to] the benefits of the contract."  *Marsu B.V. v. Walt Disney Co.,* 185 F.3d 932, 938 (9th Cir. 1999) (citing *Los Angeles Equestrian Ctr., Inc. v. City of Los Angeles,* 17 Cal. App. 4th 432, 447, 21 Cal. Rptr. 2d 313 (1993)).  This principle applies to insurance policies just as it does to other types of contracts.  *Kransco v. Am. Empire Surplus Lines Ins. Co.,* 23 Cal. 4th 390, 400, 97 Cal. Rptr. 2d 151, 2 P.3d 1 (2000).  "In order to establish a breach of the implied covenant of good faith and fair dealing under California law, a plaintiff must show that: (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits

13

was unreasonable or without proper cause." *Guebara v. Allstate Ins. Co.,* 237 F.3d 987, 992 (9th Cir. 2001) (citing *Love v. Fire Ins. *1233 Exch.,* 221 Cal. App. 3d 1136, 1151, 271 Cal. Rptr. 246 (1990)).

"The implied covenant of good faith and fair dealing acts as a 'supplement to express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement.'" *Moncada v. Allstate Ins. Co.,* 471 F. Supp. 2d 987, 996 (N.D. Cal. 2006) (quoting *Waller v. Truck Ins. Exchange, Inc.,* 11 Cal. 4th 1, 44, 44 Cal. Rptr. 2d 370, 900 P.2d 619 (1995)). The covenant "requires each contracting party to refrain from doing anything to injure the right of the other to receive the agreement's benefits." *Wilson v. 21st Century Ins. Co.*, 171 P.3d 1082, 1086 (2007). The obligation focuses on the "insurer's responsibility to act fairly and in good faith with respect to the handling of the insured's claim . . . ." *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 346, 108 Cal. Rptr. 2d 776 (2001). "[T]he reasonableness of an insurer's claims–handling conduct is ordinarily a question of fact." *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1161 (9th Cir. 2002).

Century argues that by determining coverage as a matter of law, the Court necessarily held that the relevant facts were undisputed and coverage turned on application of those facts to the Policy language in accordance with California law. (Supp. Brief at 10, ECF No. 99.) As such, Century urges that the reasonableness of Century's coverage position—and thus whether Century acted in bad faith—must be decided as an issue of law by assessing whether Century had an arguably legitimate basis to deny coverage. (*Id.*) It does not follow that because the Court determined there was coverage the issue of whether Century acted in bad faith in denying Amor's must be determined a matter of law.

Ordinarily, where bad faith is alleged, a jury is empowered to resolve conflicting evidence regarding an insurer's conduct and motives. *Neal v. Farmers Ins. Exchange* 21 Cal.3d 910, 921, 582 P.2d 980 (1978). This follows from the nature of the issue: "A determination respecting the presence or absence of good faith involves an inquiry into

14

motive, intent and state of mind.  Conclusions concerning such matters, in most cases, are founded upon inferences." *Davy v. Public National Ins. Co.* 181 Cal. App. 2d 387, 397, 5 Cal. Rptr. 488 (1960); accord, *Palmer v. Financial Indem. Co.* 215 Cal. App. 2d 419, 430, 30 Cal. Rptr. 204 (1963).  Bad faith in this context is said to be conduct violating community standards of decency, fairness or reasonableness.  *Id.* 921–922 n. 5.  The question becomes one of law only when, because there are no conflicting inferences, reasonable minds could not differ.  *Marsango v. Automobile Club of So. Cal.*, 1 Cal. App. 3d 688, 696, 82 Cal. Rptr. 92 (1969); *Hodges v. Standard Accident Ins. Co.*, 198 Cal. App. 2d 564, 574, 18 Cal. Rptr. 17 (1961).  "[A] court can conclude as a matter of law that an insurer's denial of a claim is not unreasonable, so long as there existed a genuine issue as to the insurer's liability."  *Chateau Chamberay Homeowners Ass'n*, 90 Cal. App. 4th at 347; *see also Lunsford v. American Guarantee & Liability Ins. Co.*, 18 F.3d 653, 656 (9th Cir. 1994) (citations omitted).  In other words, under the so–called genuine dispute doctrine, "an insurer does not act in bad faith when it mistakenly withholds policy benefits, if the mistake is reasonable or is based on a legitimate dispute as to the insurer's liability. *Century Sur. Co. v. Polisso*, 139 Cal. App. 4th 922, 949, 43 Cal. Rptr. 3d 468, 487 (2006), *as modified on denial of reh'g* (June 16, 2006).

In denying Century's motion for summary judgment on Amor's cause of action for breach of the covenant of good faith and fair dealing, the Court determined that, based on the evidence presented, it could not find that Century acted reasonably as a matter of law. (*See* ECF No. 25.)  The Court at trial, albeit narrowly, determined that the *Day v. Amor* judgment was covered by the Policy—and thus that there *did not* exist a genuine issue as to Century's liability based on site selection.  Consequently, it does not follow that there are no conflicting inferences regarding whether Century acted reasonably in denying Amor's claim.  Century's attempt to revisit its contention that it did not act in bad faith as a matter of law through a Rule 50(b) motion, which tests the sufficiency of the evidence to support a *jury's verdict* is inappropriate.  The issue was appropriately left for the jury to determine and the Court's reviews whether there was sufficient evidence to support the

jury's determination that Century acted in bad faith.

In addition to revisiting the coverage issue, in support of its argument that there is insufficient evidence that it acted in bad faith Century argues that it acted reasonably by not conducting a more thorough investigation.  (Supp. Brief at 12–13, ECF No 99.) Plaintiffs contend that Century wrongfully concluded that the *Day v. Amor* complaint stated no potential for coverage and relieved itself of the duty to defend without proper investigation.  Century argues that Plaintiffs are conflating distinct insurance policies and claims circumstances.  (*Id.*)  Century distinguishes "first party" insurance and timely third–party claims where an insurer has a duty to investigate the circumstances of a loss with third–party claims where the insurer's first notice of the claim is a lawsuit.  (*Id.* at 13.) Century cites *Baroco West, Inc. v. Scottsdale Ins. Co.*, 110 Cal. App. 4th 96, 103, 1 Cal. Rptr. 3d 464 (2003), for the proposition that "the insurer satisfies its duty by considering the complaint and the terms of the policy."  However, "facts extrinsic to the allegations of the complaint may give rise to a duty to defend when they reveal a possibility that the claim may be covered by the terms of the insurance policy."  *Gunderson v. Fire Ins. Exchange* 37 Cal. App. 4th 1106, 1113–1114, 44 Cal. Rptr. 2d 272 (1995); *see Baroco West, Inc.*, 110 Cal. App. 4th at 103.  To trigger such a duty, "the extrinsic facts . . . must be *known by the insurer,*" if not "at the inception of the third party lawsuit," then "at the time of tender." *Id.* at 1114, 17 Cal. Rptr. 2d 210, 846 P.2d 792.  "A trier of fact may find that an insurer acted unreasonably if the insurer ignores evidence available to it which supports the claim. The insurer may not just focus on those facts which justify denial of the claim."  *Mariscal v. Old Republic Life Ins. Co.*, 42 Cal. App. 4th 1617, 1623 (1996).  Moreover, the duty to defend is broader than the duty to indemnify.  "[F]or an insurer, the existence of a duty to defend turns not upon the ultimate adjudication of coverage under its policy of insurance, but upon those facts known by the insurer at the inception of a third party lawsuit.  Hence, the duty "may exist even where coverage is in doubt and ultimately does not develop." *Century Sur. Co. v. Polisso*, 43 Cal. Rptr. 3d 468, 488 (2006), as modified on denial of reh'g (June 16, 2006) (citing *Montrose Chemical Corp. v. Superior Court*, 861 P.2d 1153,

1157 (1993)).

Ms. Henderson testified that she carefully read the complaint (Trial Tr. at 36), which included an allegation that Amor was negligent in its site selection (*id.* at 38) and determined that determined that the claim was not covered under the Policy.  Ms. Henderson determined that the Policy was a "standard premises–specific policy" and thus did not research the law with regard to the Policy language.  (*Id.* at 50.)  She testified that she did not contact any witnesses as part of her investigation.  (*Id.* at 65.)  Following Century's denial letter, Amor's counsel Annette Clark wrote a rebuttal letter which cited California law interpreting relevant policy language and stated that Amor uses its premises as its base of operations.  (Trial Ex. 9.)  Notably, Amor's attorney did not provide Ms. Henderson with *Feurzeig v. Insurance Co. of the West*, 59 Cal. App. 4th 1276 (1997), which supports a broad interpretation of the term "arising from the use of the premises" used in the Policy.  However, Ms. Henderson testified that she did not conduct a further factual investigation after being advised of Amor's operations or review the legal authority provided by Amor until after her deposition for purposes of this trial, almost four years after Amor's claim was denied (Trial Tr. at 53–54), even when she responded to Amor's rebuttal letter addressing the bases for her decision (*see* Trial Ex. 10).  In light of the allegation regarding site selection in the *Day v. Amor* complaint, Amor's rebuttal letter apprising Century of case law "reveal[ing] a possibility that the claim may be covered by the terms of the insurance policy," *Gunderson*, 37 Cal. App. 4th at 1113–14, and Century's failure to conduct any further investigation thereafter, the Court finds that there was sufficient evidence under the substantial evidence standard to support the jury's conclusion that Century acted unreasonably and in bad faith in denying Amor's claim without investigating the facts or law governing the Policy.  The Court recognizes that the record does not provide unquestionable evidence that Century acted unreasonably but, on balance, considering the record as a whole and drawing all inferences in favor of Plaintiffs, there is a reasonable basis for the jury's conclusion that Century breached its implied covenant of good faith and fair dealing toward Plaintiffs.  The Court therefore is prepared to **DENY**

1    Century's motion for judgment as a matter of law on Plaintiffs' bad faith claim.

2         (**2**)    **Punitive Damages**

3         Century makes two arguments in support of its contention that it is entitled to

4    judgment as a matter of law on Amor's and the Days' awards of punitive damages: (1)

5    Amor and the Days failed to introduce any "clear and convincing" evidence that Century

6    acted with "oppression" or "malice" toward the Plaintiffs[3]; and (2) Amor and the Days

7    failed to show that the claimed "oppression" or "malice" is attributable to an officer,

8    director or managing agent of Century.  (Supp. Brief. at 13–15, ECF No. 99.)  Plaintiffs

9    respond that the jury's punitive damage award is supported by Century's claim handling

10   and litigation conduct.  (Opp'n at 7–17, ECF No. 105.)

11        The evidence to support an award for punitive damages for breach of the implied

12   covenant of good faith and fair dealing is "of a different dimension" from that needed to

13   support a finding of bad faith.  *Tomaselli v. Transamerica Ins., Co.*, 25 Cal. App. 4th 1269,

14   1286 (1994).  To support a claim for punitive damages, a plaintiff must present "clear and

15   convincing evidence" of "fraud, malice or oppression."  Cal. Civ. Code § 3294; *Food Pro*

16   *Intern., Inc. v. Farmers Ins. Exchange*, 169 Cal. App. 4th 976, 994 (2008); *see also Slottow*

17   *v. American Cas. Co. of Reading Pennsylvania*, 10 F.3d 1355, 1361 (9th Cir. 1993).  In

18   insurance cases, punitive damages can be most plausibly justified by a finding of

19   oppression or malice.  *Shade Foods*, 78 Cal. App. 4th at 891, 93 Cal. Rptr. 2d 364.

20   "Oppression" is defined to mean "despicable conduct that subjects a person to cruel and

21   unjust hardship in conscious disregard of that person's rights."  *Id.*  "Malice" is defined to

22   mean "despicable conduct which is carried on by the defendant with a willful and conscious

23   disregard of the rights or safety of others."  *Id.*

24        Where the finding of bad faith is close, the "sufficiency of the evidence of bad faith

25   . . . inevitably provide[s] a tenuous basis for supporting an award of punitive damages,

26

27   _____

28   [3]  Only malice and oppression are at issue as the jury did not find that Century acted with
     fraud.

since both the bad faith and punitive damage findings rest on inferences to be drawn from the same evidence." *See Shade Foods, Inc.*, 78 Cal. App. 4th at 892.  An insurer's mere "careless evaluation of a claim and persistent refusal to reconsider its denial of coverage although its factual errors were called to its attention" does not support an award of punitive damages because such conduct falls "well short of establishing by clear and convincing evidence the sort of contemptible conduct that could be described as 'despicable.'" *See id.*; *Food Pro Intern.*, 169 Cal. 4th at 994; *Tomaselli*, 25 Cal. App. 4th at 1286–87 (1994). "Despicable conduct" is conduct that is so vile, base, contemptible, miserable, wretched, or loathsome that it would be looked down upon and despised by ordinary, decent people, *Mock v. Michigan Millers Mutual Ins. Co.,* 4 Cal. App. 4th 306, 330, 5 Cal. Rptr. 2d 594 (1992); it has the character of outrage frequently associated with crime, *Tomaselli,* 25 Cal. App. 4th at 1287.  If the defendant's acts are reprehensible, fraudulent, or in blatant violation of law or policy, then punitive damages are appropriate. *Id.*  Unintentional conduct is not sufficient. *Mock,* 4 Cal. App. 4th at 332.

The clear and convincing standard requires evidence that is "so clear as to leave no substantial doubt;" "sufficiently strong to command the unhesitating assent of every reasonable mind." *Amerigraphics Inc. v. Mercury Cas. Co.*, 182 Cal. App. 4th 1538, 1558 (2010); *see also White v. Ford Motor Co.*, 312 F.3d 998, 1009 (9th Cir. 2002) (applying the clear and convincing evidence standard for reviewing punitive damages).  For punitive damages, it requires more than evidence merely suggesting "malice, fraud, gross negligence or oppressiveness." *Food Pro Intern.*, 169 Cal. 4th at 994.  "'Rather some evidence should be required that is inconsistent with the hypothesis that the tortious conduct was the result of a mistake of law or fact, honest error of judgment, over-zealousness, mere negligence or other such non[–]iniquitous human failing.'" *Id.* (quoting *Tomaselli*, 25 Cal. App. 4th at 1288, fn. 14, 31 (1994)).

Although the Court determined that inferences drawn from the evidence in favor of Plaintiffs suffice to support the jury's finding of bad faith, "it is an entirely different issue of whether this evidence supports, by clear and convincing evidence, a finding of malice

or oppression." *Shade Foods, Inc.*, 78 Cal. App. 4th at 909.  *Shade Foods, Inc*. underscores the high bar for the sufficiency of the evidence to support malice or oppression in contrast to bad faith.  In deciding whether the insurer's coverage decision met the standard of conduct necessary for recovery of punitive damages, the court in *Shade Foods* noted that an insurer's conduct might meet the standard for "malice" or "oppression" and yet still not be so contemptible to qualify as "despicable."  *Id.* at 892, 93 Cal. Rptr. 2d 364.  The court found insufficient the insurer's initial inflexible position on complex coverage issues and failure to communicate with the insured and conduct a minimal investigation that would have revealed the weakness of the insurer's coverage position.  *Id.*  The insurer failed to conduct any meaningful investigation into the insured's claim, and it "greatly overestimated its defenses," concluding there was no potential for coverage.  *Id.*  The insurer refused to consider any of the additional arguments made by the insured.  *Id.*  The court upheld the jury's bad faith award, finding that the defendant's conduct may have been unreasonable but it dismissed the punitive damage award, explaining that the question of bad faith was so close that the jury could not "reasonably find that it constituted clear and convincing evidence of 'despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights' or 'despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.'"  *Id.*

As in *Shade Foods, Inc.*, the instant case presents only a "marginally sufficient case of bad faith."  *Id*. at 909–10.  Although there is sufficient evidence to support the jury's finding that Century acted unreasonably in in failing to conduct any investigation into the legal or factual bases underlying Amor's claim, particularly following Amor's rebuttal letter, this conduct falls "well short of establishing by clear and convincing evidence the sort of contemptible conduct that could be described as 'despicable.'"[4]  *Id.* at 892.  An

---

[4]  Plaintiffs in their opposition argue that the jury's award of punitive damages, along with failure to investigate, is supported by Century's "unreasonable litigation conduct."  (Opp'n

insurer's mere "careless evaluation of a claim and persistent refusal to reconsider its denial of coverage although its factual errors were called to its attention" does not support an award of punitive damages. *Id. See also Food Pro Intern*, 169 Cal. 4th at 99 (where an insurer's denial of coverage is the result of a "mistake of law or fact, honest error of judgment, overzealousness, mere negligence" an award of punitive damages is inappropriate as a matter of law). *Cf. Amadeo*, 290 F.3d at 1165 (stating that insured's claim withstood summary judgment with regard to punitive damages because there was sufficient evidence that denial of the plaintiff's claim went beyond "the unfortunate result of poor judgment," resulting instead from a plainly unreasonable interpretation of the policy and deliberately restricted investigation in an attempt to deny benefits); *see also Tibbs v. Great American Ins. Co.*, 755 F.2d 1370, 1375 (9th Cir.1985) (finding sufficient evidence to support punitive damages where insurer conducted little or no investigation into its duty to defend, did not compare the plaintiff's claim with the insurance company's policy, and did not inspect the policy itself).

Plaintiffs, citing *Polisso v. Century Surety Co.*, 139 Cal. App. 4th 922 (2006), argue that punitive damages have been affirmed based on less egregious conduct that in the instant case. In *Polisso*, the insurer initially agreed to defend the insured because the claims adjuster believed there was a "potential for coverage." *Id.* at 934. The California Court of Appeal affirmed a punitive damage award, in part because "Century knew it had a duty to defend the Polissos, it took every opportunity to stall, stonewall, engage in scare tactics, and then refused to pay [independent counsel] in full or in a timely manner . . . so [the independent counsel] would withdraw from the . . . action, leaving the Polissos' defense in Century's hands so it could deny coverage rather than defend them." *See id.* at 965. There is no evidence of this type of egregious conduct in the instant case suggesting that "Century

---

at 12, ECF No. 105.)  Courts review a jury's verdict for substantial evidence in ruling on a properly made motion under Rule 50(b). *Janes*, 279 F.3d at 888.  Century's litigation conduct was not considered by the jury and is irrelevant to Century's Rule 50(b) motion.

acted with reckless indifference to [plaintiff's] health and peace of mind," as the court found in *Polisso*.   139 Cal. App. 4th at 965.   Plaintiffs did not present any evidence suggesting that Century believed there was a potential for coverage.   Plaintiffs assert that Century acted more egregiously than Defendant in *Polisso* because the Century refused to defend or indemnify them at all without investigating all of the facts and legal issues, even when it knew of plaintiffs' financial vulnerabilities.   However, mere failure to undertake a proper investigation of the facts and mistakes of law are not enough to support an award of punitive damages.   *See Food Pro Intern*, 169 Cal. 4th at 995 (citing *Tomaselli*, 25 Cal.App.4th at 1288); *see also Shade Foods, Inc.*, 78 Cal. App. 4th at 892.   Accordingly, Plaintiffs' reliance on *Polisso* is unavailing.   There, in affirming punitive damages, the Court relied on the fact that Century believed that there was a potential for coverage but nonetheless attempted to obstruct plaintiff's defense and force plaintiff to settle.   Century's failure to conduct a factual investigation or properly interpret the law—as is the case here—was not the basis for the Court's decision.

Interpreting the facts of the present case in the light most favorable to Plaintiffs, the Court finds there was insufficient evidence for the jury's award of punitive damages. While Century's coverage position and failure to conduct an investigation may have been unreasonable, it does not support an inference by "clear and convincing" evidence that Century acted with malice or oppression.   Plaintiffs did not present evidence suggesting Century knew or believed that the Policy entitled Plaintiffs to coverage, intended to take advantage of Plaintiffs' economic situation, or otherwise acted in a way that can properly be characterized as despicable.   Having found that Plaintiffs' have not established by clear and convincing evidence that Century acted with malice or oppression, the Court need not address whether Ms. Henderson's conduct was ratified by a Century officer, director or managing agent.   In light of the foregoing, the Court is prepared to **GRANT** Century's motion for judgment as a matter of law on Plaintiffs' punitive damages claims.

//

//

**(3)     The Days' Emotional Distress Damages**

Century argues it is entitled to judgment as a matter of law on the Days' claim for emotional distress damages because the Days presented no evidence of economic loss other than delay in paying the *Day v. Amor* judgment.  (Supp. Brief at 15–17, ECF No. 99.)

Awards for emotional distress are not confined to cases of intentional infliction of emotional distress; "damages for mental distress have also been awarded in cases where the tortious conduct was an interference with property rights without any personal injuries apart from the mental distress." *Crisci v. Security Ins. Co.*, 66 Cal. 2d 425, 433 (1967). Under California Law, a plaintiff who loses property and suffers emotional distress can recover damages for the loss of property and emotional distress without proving "outrageous conduct" or "severe emotional distress," as required in intentional infliction of emotional distress cases. *See id.*, *see also Waters v. United Services Auto. Assn.*, 41 Cal. App. 4th 1063, 1072-73 (1996) (quoting *Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d 566, 579 (1973)).  A plaintiff must prove some economic loss as a result of defendant's interference with plaintiff's property rights to support the emotional distress damages.  *See Gourley v. State Farm Mut. Auto. Ins. Co.*, 53 Cal. 3d 121, 128 (1991); *Maxwell*, 60 Cal. App. 4th at 1450; *see also Waters*, 41 Cal. App. 4th at 1071-72.

Emotional distress damages are recoverable in bad faith cases "only when the insureds have suffered a financial loss." *Waters v. United Servs. Auto. Ass'n,* 41 Cal. App. 4th 1063, 1069, 48 Cal. Rptr. 2d 910 (2d Dist.1996).  Such financial loss must be "actual, not merely potential." *Major v. W. Home Ins. Co.,* 169 Cal.App.4th 1197, 1214, 87 Cal. Rptr. 3d 556 (4th Dist. 2009).  A simple delay in paying policy benefits does not satisfy the economic loss requirement, but additional costs incurred by a plaintiff as a result of delay can satisfy the requirement. *Compare Maxwell*, 60 Cal. App. 4th at 1450*; with Gruenberg*, 9 Cal. 3d at 580 (finding that eligible economic loss includes loss of earnings, loss of a business; inability to pay business creditors, costs incurred to defend lawsuits brought by creditors, and medical expenses); *and Delos v. Farmers Insurance Group*, 93 Cal. App. 3d 642, 658–659 (1979) (affirming a jury's award of emotional distress damages

where insureds spent $850 on attorneys' fees to prosecute an underlying claim); *and Fleming v. Safeco Ins. Co.*, 160 Cal. App. 3d 31, 38, (1984) (affirming an award of emotional distress damages of $12,771.68 supported by a financial loss of $1,528.32 for attorneys' fees and costs of suit). The court cannot infer economic loss for attorney's fees "when no proof of a fee agreement of any sort was presented to the jury" or to the Court. *Waters*, 41 Cal. App. 4th at 1081. Similarly, the Court "cannot infer that medical or hospital bills were incurred when there is no reference to any such bills and when it appears distinctly probable that [plaintiff's] medical bills were all covered by . . . health insurance." *See id.*

To support an award of damages for emotional distress, "any substantial evidence in support of the jury's conclusion is sufficient." *Austero v. Washington Nat'l Ins. Co.*, 132 Cal. App. 3d 408, 417 (1982). The jury has "wide discretion" in determining emotional distress damages, and the Court should lower the damages "only when the sum awarded is so large that the verdict shocks the moral sense and raises a presumption that it must have resulted from passion or prejudice." *Fletcher v. Western National Life Ins. Co.*, 10 Cal. App. 3d 376, 409 (1970).

First, Century's argues that "the only economic loss evidence offered by the Days is the loss of the funds due under their judgment against Amor" (Supp. Brief at 16, ECF No. 99). Relying on *Maxwell v. Fire Ins. Exch.*, 60 Cal. App. 4th 1446, 70 Cal. Rptr. 2d 866 (1998), Century argues that the loss of the use of funds due to the Days under their judgment against Amor is not an eligible "economic loss" for the recovery of emotional distress damages. In *Maxwell*, plaintiff was struck in the face with a bat. (*Id.* at 687.) The person who wielded the bat was insured by Capiello. Plaintiff sued Capiello and the owners of the batting cage, who were insured by Scottsdale Insurance Company. (*Id.*) At trial judgment was returned in favor of plaintiff against both Capiello and the owners. (*Id.*) Because the insurance companies delayed in satisfying the judgment, plaintiff brought suit seeking damages for breach of contract and bad faith withholding of amounts due under judgment. (*Id.*) Eighty–one days after payment became due, and after plaintiff filed suit,

the insurance companies paid the balance due under the judgment.  (*Id.*)  Thereafter, the trial court granted summary judgment in favor of the insurers on the grounds that plaintiff could not prove economic loss, other than a delay in payment.  (*Id.*)  The Court of Appeals affirmed, finding that plaintiff could not recover without a showing of economic loss.  (*Id.* at 689.)

The Court agrees with Plaintiffs that *Maxwell* is inapposite.  Century has not paid judgment in this case so this is not a delay in paying judgment—it is a failure to pay case.  Further, unlike in *Maxwell*, the Days introduced evidence of economic loss beyond loss of use of the funds due under the Days' judgment against Amor.  Plaintiffs presented evidence that they incurred substantial attorney's fees as a result of Century failing to pay the *Day v. Amor* judgment, which satisfies the economic loss threshold required for emotional damages.  In *Delos v. Farmers Insurance*, the insurer refused to pay the Deloses claim, which forced them into litigation to receive payment.  *Delos*, 93 Cal. App. 3d at 647-48, 658-59.  The court found the economic loss requirement for emotional distress damages satisfied by the fees the Deloses paid at the trial court, as well as potential contingent fees Mr. Delos might incur on appeal of the directed verdict.  *See id.* at 659 n. 5.  Likewise, in the instant case, Century's nonpayment to Amor has resulted in the Days' involvement in the instant litigation.   At trial the Days introduced evidence of their contingent fee agreement with their attorney.  (*See* Trial Tr. at 515; Trial Ex. 15.)  Thus, as a result of this litigation, the Days incurred attorney's fees that satisfy the economic loss requirement for emotional distress damages.[5]  As an additional matter, the court in *Delos* found that both

---

[5]  Century argues that the Days' attorney's fees do not qualify as an eligible economic loss because (1) the contingent fee agreement is dated 2008, before they obtained an enforceable judgment and became third–party beneficiaries under the Policy; and (2) a pure contingent fee does not obligate the Days to pay anything until and unless they recover a judgment so they have not suffered an economic loss.  (Supp. Brief at 17, ECF No. 99.)  Century does not cite any authority and the Court does not find any supporting Century's first argument.  As discussed in Section 4, the prosecution of the Days' claim as third party judgment creditors was contemplated by the fee agreement.  Century's second argument is

Mr. and Mrs. Delos could recover emotional distress damages although only Mrs. Delos was injured.  *Delos*, 93 Cal. App. 3d at 659.  Thus, both Heather and Ronald Day can recover for emotional distress damages.

Additionally, the Days presented other evidence of economic loss resulting from Century's refusal to pay the *Day v. Amor* judgment.[6]  Ronald Day testified that Century's refusal to pay the claim prevented him from receiving the proper, timely treatment for his brain injury, which was not covered by workman's compensation.  (Trial Tr. at 179:17-23.)  Heather Day testified that as a result of Century's refusal to pay the judgment, the Days incurred medical bills, lost their house, depleted their savings and incurred debt, and lost their family business.  (Trial. Tr. at 285–89.)  She further testified that Ronald Day is still accruing medical bills.  (*Id.* at 286.)  The Court recognizes that loss of a business, loss of income, and medical bills can satisfy the economic loss requirement.  *Greunberg*, 9 Cal. 3d at 580.  However, the Court finds that the loss of the business cannot be attributed to Century because the business closed before the Days filed a lawsuit against Century.  (*Id.* at 291.)

In light of the foregoing, the Court finds that the Days have satisfied the economic loss requirement for emotional distress damages, and there is substantial evidence of emotional distress in the record to support the jury's finding.  Furthermore, the Court does not find that the jury's award "shocks the moral sense."  *Fletcher*, 10 Cal. App. 3d at 409.  Accordingly, the Court is prepared to **DENY** Century's motion for judgment as a matter of law on the Day's claim for emotional distress damages.

---

unpersuasive as courts have allowed for contingency fee agreements to satisfy the economic loss requirement.  *See e.g.*, *Fleming*, 160 Cal. App. 3d at 38; *Delos*, 93 Cal. App. 3d at 658–659.

[6]  In support of their opposition brief, Plaintiffs request judicial notice of the Bill of Costs filed by Mr. Crown on behalf of the Days with the Clerk's Office in connection with this case.  (*See* ECF No. 105–2.)  The Court declines to take judicial notice as the Bill of Costs was not considered by the jury.

### (4)   The Days' Claim for *Brandt* Fees

Century moves for judgment as a matter of law on the Day's claim for *Brandt* fees. (Supp. Brief at 17–20, ECF No. 99.)   Century argues that the only evidence the Days introduced to support their claim was the contingent fee agreement with their counsel is insufficient for an award of *Brandt* fees.[7]   (*Id.* at 17.)   Century contends that the Days "presented no evidence at all to apportion their contingent fee according to the relative time spent pursuing contract vs. extra–contractual claims." (*Id.* at 19.)   The Days respond that in addition to the contingency fee agreement presented at trial, Mr. Crown—who incorporated Mr. Miller's testimony regarding the allocation of his time devoted to recovering contract benefits and time devoted to the issue of bad faith—testified that ninety percent of his time was spent on securing contract benefits on behalf of the Days.   (Opp'n at 21–22, ECF No. 105.)   The Days therefore contend that evidence regarding the time devoted to recovery on the contract claim is clearly demonstrated on the record.[8]   In the alternative, if the Court disagrees, the Days argue they must be permitted an opportunity to clear any deficiency in light of the timing and manner in which Century's Rule 50(a) motions were presented.   (*Id.* at 23.)

The default rule is that each litigant must bear its own attorneys' fees.   *Fleischman Corp. v. Maier Brewing*, 386 U.S. 714, 717-718 (1967).   When an insurance company refuses to pay an insured's claim and forces an "insured to retain an attorney to obtain the

---

[7]   Century also argues that the jury's award of *Brandt* fees is improper because the fee agreement was entered into in 2008 to prosecute the underlying personal injury action against the CCC and Amor, before the Days became judgment creditors in the instant action.   However, the fee agreement specifically contemplated prosecution of "any other action which may become necessary . . ." in connection with the underlying litigation. (Trial Ex. 15, Section B.)

[8]   The Days also proffer the Declaration of Larry J. Crown ("Crown Decl.," ECF No 105–1) "to clear up any remaining questions regarding the Days' attorney fee allocation."   (*Id.* at 22.)   Century objects to the Crown Declaration because a Rule 50(a)(1) motion tests the sufficiency of the evidence *presented to the jury*.   The Court agrees and does not consider the declaration in its analysis.

benefits due under a policy, it follows that the insurer should be liable in a tort action for that expense.  The attorney's fees are an economic loss—damages—proximately caused by the tort."  *Brandt v. Superior Court*, 37 Cal. 3d 813, 817 (1985).  Furthermore, an insured's claim for *Brandt* fees is assignable to a third party.  *Essex Ins. Co. v. Five Star Dye House, Inc.*, 38 Cal. 4th 1252, 1264 (2008).  The insured or third party can recover only for those fees incurred "to obtain the policy benefits and that would not have been incurred but for the insurer's tortious conduct."  *See id.* at 819.  The trier of fact must determine the amount of fees to award because they are recoverable as damages.  *See id.* In order to recover *Brandt* fees:

> The insured is required to plead and prove (1) the amount to which the insured was entitled to recover under the policy, (2) that the insurer withheld payment unreasonably or without proper cause; (3) the amount that the insured paid or incurred in legal fees and expenses in establishing the insured's right to contract benefits and (4) the reasonableness of the fees and expenses so incurred.

*Jordan v. Allstate Ins. Co.*, 148 Cal. App. 4th 1062, 1079 (2007) (footnote omitted).

The amount recovered in *Brandt* fees "may not exceed the amount attributable to the attorney's efforts to obtain the rejected payment due on the insurance contract."  *Brandt*, 37 Cal. 3d at 819.  "That amount, even in a contingency fee case, could exceed a set percentage of the contract benefit."  *Cassim v. Allstate Ins. Co.*, 33 Cal. 4th 780, 809 (2004). It does not matter how much the insurer owed under the contract, *Brandt* fees are awarded based on the cost the insured incurred to recover the amount owed under the contract.  *See id.*  A plaintiff cannot recover for work his or her attorneys did on an emotional distress claim or on a punitive damages claim.  *See id.* at 811-12.  A proper calculation of *Brandt* fees requires the trial court to:

> [D]etermine the total number of hours an attorney spent on the case and then determine how many hours were spent working exclusively on the contract recovery.  Hours spent working on issues jointly related to both the tort and contract should be apportioned, with some hours assigned to the contract and some to the tort.  This latter figure, added to the hours spent on the contract

alone, when divided by the total number of hours worked, should provide the appropriate percentage.

*Id.*

A plaintiff must prove "by a preponderance of the evidence both the existence and the amount of damages proximately caused by the defendant's tortious acts or omissions." *Id.* at 813. In order to recover *Brandt* fees, a plaintiff must be able to separate out its litigation expenses such that it can clearly demarcate the fees that are attributable to its pursuit of the benefits it is entitled to under the policy, which are recoverable as *Brandt* fees, from "the fees expended on obtaining amounts in excess of the policy, such as consequential damages, [which] aren't recoverable." *Slottow*, 10 F.3d at 1362 (citing *Brandt,* 37 Cal.3d at 817, 210 Cal.Rptr. 211, 693 P.2d 796); *see also Cassim v. Allstate Ins. Co.,* 33 Cal. 4th 780, 813, 16 Cal. Rptr.3d 374, 94 P.3d 513 (2004) (citing *Slottow,* 10 F.3d at 1362)). Therefore, the party seeking *Brandt* fees must be able to provide evidence that the attorneys' fees for which it seeks to recover as *Brandt* fees were incurred specifically for the purpose of obtaining what it is entitled to under the policy. A plaintiff's attorney has no excuse for failing to do the necessary segregation of fees because the *Brandt* rule is not new. *See Slottow*, 10 F.3d at 1362 (affirming district court's decision not to grant *Brandt* fees because the plaintiff made no effort to segregate its litigation expenses); *see also* Croskey et al., *Cal. Practice Guide: Insurance Litigation* § 13:135 (The Rutter Group 2003) (commentator cautioning on *Brandt* fees: "If you represent the insured, keep careful time records. You may be handling the case on a contingency fee basis but you are going to need detailed time records to segregate and substantiate any claim for attorney fees as damages.").

Although the Days are entitled to recover *Brandt* fees, the Days have not met their burden of proof required to substantiate the jury's award of $400,000.00 in *Brandt* fees. "When an insured seeks both consequential damages and policy benefits, the insured bears the burden of identifying which fees and costs were incurred to recover the policy benefits." *Reed*, No. C-94-0773 VRW, 1998 WL 34072536, at *1. Although Century's

characterization that the only evidence the Days introduced to support their *Brandt* fees claim was the contingent fee agreement with the counsel is inaccurate, the contingency fee agreement and Mr. Crown's testimony—including his statements that the Days' fees should be allocated in the same manner as Amor's (i.e., ninety percent on the contract claim) (*see* Trial Tr. at 305–06)—are insufficient without segregation of fees reflecting allocation of time spent on the contract claim as opposed to other claims.  Mr. Crown only testified that he charges a contingency fee of forty percent (*id.* at 305) and then stated that his fees should be determined "just like Mr. Miller testified" immediately prior.  (*Id.* at 306–306.)  Mr. Miller estimated that ninety percent of his work was related to obtaining the "contracts benefits" with ten percent related to "other stuff" but to be cautious he would testify that the ratio was fifty percent on securing contract benefits.  (*Id.* at 302.)  Although Mr. Crown made some effort to estimate time spent on prosecuting the Days' contract claim, an attorney's "proffered estimate of hours" spent on each claim is an unacceptable method for segregating fees.  *Reed*, No. C-94-0773 VRW, 1998 WL 34072536, at *1.  This case is distinguishable from *Reed* because unlike in *Reed*, with respect to *Brandt* fees, the Days' are not "simply claiming a right to [a percentage] of a judgment pursuant to a contingency agreement," which is a "method of calculation [that] awards plaintiff's counsel for time spent on non[–]recoverable claims."  *Id.*, at *1.  The Days seek recovery of approximately forty percent of the judgment on the jury's award of damages for breach of contract, not forty percent of the entire judgment for the Days.  However, the Court finds that the contingency fee agreement and Mr. Crown's estimate that he has dedicated ninety percent of his time to prosecuting the Days' breach of contract claim does not constitute substantial evidence to support the jury's award.[9]

---

[9]  The Court notes that the Days were awarded approximately $2.4 million in compensatory damages ($1 million for breach of contract, $400,000 for bad faith economic damages, and $1 million for bad faith noneconomic damages).  Under the *Cassim* methodology, taking into account the forty percent contingency fee agreement, the total legal fee for the Days' compensatory damage award is thus forty percent of $2.4 million, or $960,000.  Assuming

Plaintiff's argument that attorney's fees do not need to be supported by accurate time records does not apply when discussing *Brandt* fees.  Plaintiffs rely on *Marderossian & Assoc. v. Ersoff*, which states "there is no legal requirement that an attorney supply billing statements to support a claim for attorney fees.  As this court has held, 'An attorney's testimony as to the number of hours worked is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records.'"  153 Cal. App. 4th 257, 269 (2007 (quoting *Steiny & Co. v. California Electric Supply Co.*, 79 Cal. App. 4th 285, 293 (2000)).  However, the attorneys in *Marderossian* were attempting to recover attorney fees from a client who refused to pay them; the case did not involve *Brandt* fees.  *Brandt* fees are unique, in that they are viewed as "an economic loss—damages—proximately caused by the tort."  *Brandt*, 37 Cal. 3d at 817 (1985).  *Brandt* fees are thus governed by their own standard, and a recover of *Brandt* fees requires more than fair proximations.  Croskey et al., *Cal. Practice Guide: Insurance Litigation* § 13:135; *see Reed*, 1998 WL 34072536, at *1 (dismissing a claim for *Brandt* fees where attorney attempted to proximate the amount of hours worked on recovery of benefits owed under the policy, even when the attorney submitted time sheets because the time sheets did not differentiate between time spent on recoverable and non–recoverable claims).

Accordingly, the Days' failed to prove, by a preponderance of the evidence, the time their counsel spent working on recovering the benefits owed under the policy that proximately resulted from the insurer's tortious, bad faith conduct.  However, a Rule 50(a) motion cannot be granted until a plaintiff has notice and an opportunity to correct deficiencies in its case.  *Waters v. Young*, 100 F.3d 1437, 1441 (9th Cir. 1996) (reversing judgment and remanding case for new trial after judgment as matter of law due to the district court's failure to apprise the nonmoving party of evidentiary deficiencies and afford

---

that the Days' counsel establish that they dedicated just fifty percent of their time on issues related solely to the contract, the Days would be entitled to an award of approximately $480,000, more than the jury's award of *Brandt* fees as it stands.

the nonmoving party opportunity to correct deficiencies) (citing Fed. R. Civ. P. 50, 1991 adv. comm. note ("In no event, however, should the court enter judgment against a party who has not been apprised of the materiality of the dispositive fact and been afforded an opportunity to present any available evidence bearing on that fact.")).  *See also Pet Food Exp. Ltd. v. Royal Canin USA, Inc.*, No. C-09-1483 EMC, 2011 WL 6140874, at *5 (N.D. Cal. Dec. 8, 2011) (same); *Conley v. R.J. Reynolds Tobacco Co.*, 286 F. Supp. 2d 1097, 1102 (N.D. Cal. 2002) (same).

Here, on January 27, 2016, Century filed a written motion for judgment against the Days on their claim for *Brandt* fees.  (ECF No. 79).  Century orally presented these three Rule 50(a) motions before the jury began its deliberations.  (Trial Tr. at 464–65.)  The parties were not provided with copies of the motions until they were presented to the Court.  (*Id.* at 463–64.)  The Court deferred ruling on these motions until after the case was submitted to the jury.  (*Id.* at 463–564.)  After the motions were presented, the jury was brought in, the Court provided jury instructions, counsel presenting closing statements, and the jury was discharged for the evening.  (*Id.*)  The following morning on January 28, 2016, while the jury was deliberating, Century orally asserted the same three motions under Rule 50(a) for judgment as a matter of law:  (*See id*. at 570:8–16.)  The Court heard argument on Century's claim regarding punitive damages, took Century's motion under submission and ordered a briefing schedule on the Rule 50(a) motions.  (*Id.* 570–71.)  The Court finds that in light of these circumstances the Days were not afforded with sufficient opportunity to correct evidentiary deficiencies relating to *Brand* fees before the case was submitted to the jury.  Accordingly, although the Court finds there was insufficient evidence to support the jury's award of *Brandt* fees, Court is prepared to hold additional proceedings to address the issue of *Brandt* fees.

//

//

//

//

1

## CONCLUSION

2        Counsel are advised that the Court's rulings are tentative, and the Court will entertain

3  additional argument during the April 8, 2016 hearing.

4        **IT IS SO ORDERED**.

5  Dated:  April 7, 2016

6                                                    Hon. Gonzalo P. Curiel

7                                                    United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

33